The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Be seated, please. All right. First session of the new term. We'll hear a case of Ballard v. Combis. Mr. Truslow. Good morning. In South Carolina, this might be referred to as a James Brown, soul singer type of case. Incredible. It's a dysfunctional family, a lot of acrimony, lots of going back and forth, making unseemly claims against each other, delay, delay, litigation, litigation, and finally, they did one thing right. They decided to select an independent person to act as a personal representative and a successor trustee. That's where we started. We've got two cases before you. In one, I represent the personal representative, successor trustee, in which she's the appellant, relates to a note. In the other one, we're the appellee and it relates to a trust. I would like to first, with your permission, address the note because it appears it's the clearest and it works in sequence. Facts aren't in dispute. This is an issue of law. It's whether a Rule 41 dismissal, a voluntary dismissal without prejudice, shortens a statute of limitations from three years down to one. Essentially, what the court ruled, the court first got it right and then apparently got confused and ruled that a one-time voluntary dismissal without prejudice limits you to one year. I don't think the court held that. I think your reading of the statute is the one year doesn't shorten it. It could extend it to the one year. I asked where the court held because in this case, the one year could be implicated because of the timing of this. Yes, sir. If you read it that way, the way you advance, I'm not sure it advances your position at all. What the court indicated apparently on the record was they were buying into 365 days to renew after a voluntary dismissal. In the additional reason is the action wasn't commenced within three years of the time of breach. What do you say is the relevant statute of limitations? I'm sorry? What do you say is the relevant statute? Three years. Why is it three years? It's on a note. But which jurisdiction are we talking about? I'm sorry, sir? Which jurisdiction's law applies? North Carolina. I think everybody's agreed that this was a three-year statute of limitations in which to bring the action. The problem is that there's nothing in the record. Why does North Carolina law apply if the case was brought in South Carolina? Isn't the statute of limitations a procedural device? It would be three years in South Carolina. It would be three years in North Carolina. Is that the case even though we're talking about a personal representative bringing the lawsuit who was never appointed until six years later? We don't think it was a three-year statute of limitations in this event because there would have been a tolling. The reason was there was never, there's no indication in the record at all when a breach took place. Yes, there is. That's what I was going to ask you, except the payments were supposed to be made. The loan amount wasn't, but there were payments required by the note. There were several items required. And those were identified as not being complied with shortly after July 14, 2005. And it seems to me because the breach occurred probably in July or August of 2005, whenever you say those payments had never been made and they were due then. And it seems to me this limitations discussion doesn't further the ball. I would respectfully agree and distinguish it. And here's why. Number one, we don't know when the payments were made. Number one, if you look at the... The allegations, the whole record says they were never made, right? No, there was... Any evidence that they were made, the payments provided for in the note? Some of the payments were made and some weren't. You had payments that were made for the daughter, for some insurance, for some payments for some salary, some periodically made ones. There was some insurance that was supposed to be paid, but the important part of it was the balloon payment was due 30 days after death. I understand, but the balloon payment, there were other obligations of that document that were breached far earlier. But the claims aren't the same. The claims are not the same. So the second claim, while the remedy may end up being the same, the claim one is for That's what we say. It couldn't be brought, that action couldn't be brought until he died. That's exactly what we say. The balloon payment... Let me stop you. The action, as I understand the law, the action couldn't be brought until a personal representative was appointed. Isn't that right? Yes, sir. And in fact, yes, sir, we agree. So the statute of limitations doesn't run until that personal representative is appointed or the later of some end date under South Carolina law, which I think is six years or if you don't appoint a representative. And that's the problem here, isn't it? Yes, sir. And it's even more egregious because George Combos was named as a personal representative of the estate. And he had no interest in opening an estate because then he would have to pay back the money or through his... He owned 100% of the company that it was obligated. He was the named personal representative. He wasn't going to bring a cause of action against himself because then he'd have to pay back the money. So we're not making a claim for payments that he didn't make to the... George didn't... Or his company didn't make to the daughters or his sisters or for that interest up until that point in time. And that was alleged in the complaint that it breached. In other words, he didn't make the payments to Mary Combs and Linda's in the terms of 150 per week, didn't pay the And those were breaches occurred in July 2005. The money was supposed to be returned 30 days after his death. Yes, sir. That's not a breach issue. That was just the term of the... The money was like a use. You're going to use the money for this period and return it. But it was breached far earlier than after his death. Part of it was, but there wasn't an acceleration clause. There's no... It doesn't need acceleration. All you need to do is sue for breach. And who... And I would ask a rhetorical question. Would he... Did he... Was it well pled? Did he include all the necessary parties? What happened with the lawsuit? The lawsuit distinction is... We're not asking that. We're asking when did the cause of action accrue? When did the... When could have suit been filed? When the... On the 230... 2005. No, the 230,000 wasn't due until 30 days after his death. But the other portions were breached immediately. And so they could have been sued upon. At some point in time, they were. It's undefinite as when those breaches took place. There was... There was no documentation that I recall that would reflect precisely when that occurred. But this action... Well, my point... My whole point is if the document was breached in July, any limitations you're talking about ran. And we don't have to solve this 41... Rule 41 issue or whether the district court misunderstood it. The action was filed. No indication that it was served. There's no affidavit of service. Not well pled. The opposing side conceded that it was not well pled. That doesn't matter as to when a cause of action accrues. There's no question it was breached as of that time and alleged the reasons. And you look on the face of the note and those reasons are breaches. But we don't know when they occurred. Sometime before, we know precisely that on April, I think it was April 7th, April 17th, 2007, when an action was brought, that there had been... There had been an alleged breach as it related to certain terms. But the... Certainly occurred, the breach certainly occurred as evidenced by the filing of the complaint by 2007. It was alleged in that complaint. Yes, sir. Three years after 2007 is 2010. Yes, sir. You didn't bring this action until 2013. That's correct, Your Honor. However, in the meantime, Mr. Combus Popp died. He died in February of 2009. If you had a three-year statute of limitations and a breach occurred somewhere around April of 2007, he has died. The personal representative or named personal representative is George Combus. He's not bringing a cause of action because he would have to pay back the money. Do you have an example in the North Carolina law that says because an estate is not open, the statute of limitations is tolled? I don't think we ever got to that point because the judge ruled before we... I don't know of such a thing in any jurisdiction. Well, we have equitable tolling in almost every jurisdiction. Do you have a case that suggests that? We never got to that point in the case, but... Do you know of a case? I'm sorry, sir? Do you know of a case? I've read the cases. I can't... We never got to that point, so we didn't brief that issue. We never got to... Part of the confusion here is, I think, it's not even clear that North Carolina law applies in this instance because this was a federal district court sitting in diversity. It had to consider what law South Carolina would apply to these facts. I think that South Carolina's law applies with respect to the statute of limitations, and there is case law that says in South Carolina that until a personal representative is appointed, the statute of limitations does not begin to run or is tolled. We agree. We agree with that principle. Even though you don't know what the case is, but I do. Well, I've looked at equitable tolling, but we never... I should pose my question to Judge Diaz. Let me just tell you the case because it's Witt v. Elmore. It's a very ancient... It's not a recent case. It's a 1832 case, but the holding there was that the statute of limitations under South Carolina law does not begin to run until letters of administration are issued, and in this case, that did not happen until far down the road, and that's why I'm suggesting to you that notwithstanding the fact that in an ordinary case, the statute of limitations would run upon the breach, that's not the case here. The problem, of course, is that none of this was brought to the district court's attention by anyone. Well, we tried to raise it both in our motion for reconsideration when the court had ruled and we filed a written motion, Mr. Nosel, and further expanded on this, and we think that the statute would start to run when a personal representative was appointed. She timely made the claim. I think you're right. Why didn't the cause of action pass the limitations even before he died? In other words, the money was transferred, $230,000 was transferred to the business for use until 30 days after he died. The condition of that money being there is that the salaries and the insurance and the cars be paid. The allegation made in 2007 was that that was never done, and therefore, the 2002 note was breached almost as soon as it started. The company didn't, and they could have filed suit, and then the money would have had to have been returned because the conditions weren't applied. If you take that reading of it, then the accrual of the cause of action in 2005 expired, was it, in 2008, and he died, what, 2009? Yes, sir. He died in 2009, but I respectfully disagree. There was testimony from Ms. Ballard to the effect that there were some periodic payments that were made. The problem is that the person who had the documentation would reflect what was paid, and what wasn't didn't provide the documentation, even when the court gave him an opportunity at the close of evidence to present more evidence that would reflect on this. We're left with a situation in which we don't know when the breach took place. The best evidence we have is somewhere around April of 2007, or shortly before then, because that's when the action was brought. We don't know exactly when the breach took place. The only evidence we have on the record is somewhere shortly before April of 2007. Anything else? Not on that issue. On the other issue, I think my time is about up, but on the other issue, we said, I know in baseball, 50-50, you'd be in the Hall of Fame, but we respectfully suggest that the lower court erred in the first instance. In the second instance, he got it absolutely right. They took money, they misappropriated it, they applied the line of credit, and secured with their joint home. Why don't we let the appellants on that issue speak first, and then you'll come back up and respond to what they argue on that. Thank you very much for your time. Mr. Redding. Nice to meet you, Mr. Court. Not familiar with BL Moore, the parties did not argue the choice of law in the trial court, never came up, accepted that it was North Carolina, that applies. Having heard about it for the first time now, I still think this case is decided on the first lawsuit that was brought. The lawsuit itself, which was sufficiently pled, stated that the interest rate should start in a prayer for relief at about the time that the note was executed, which puts it all the way back in July of 2005. That's what the prayer for relief said. That's when the prayer for prejudgment interest started. I guess the problem, though, is that we're dealing with a termination clause in the promissory note, which could not have been enforced until 30 days after the decedent's death, Pop's death in this case. So why is it that the first lawsuit would cover that claim? I'm having trouble with that. I think the district court noted that this is kind of a hand-drafted or a home-drawn note, and it really was. No lawyers involved in its drafting, so it's hard to understand. We would contend that it's not an installment contract that has an acceleration clause or needs one. Really what it is is an agreement to use money during Pop's lifetime for the company's benefit. Again, it's Pop's company. Pop and George, father and son, are in the process of trading the company or moving the company to the next generation. Pop agrees to let the company use $230,000 during his lifetime. If George agrees on behalf of the three things, take care of the insurance, the car, and pay a 7% quarterly interest payment. So those are three things that are in consideration to use the money. That's the consideration. So relief would be that if they breached those things, the money would go back. If he did not breach those things. It clearly makes it a use of the money. It just says monies will be put back in the estate after his death. But that's on the condition that the conditions were satisfied. If the conditions were not satisfied by then, presumably the money goes back to the father. I agree. I think it's conditional in two ways. Number one, it says the money is made available. Because we never put on a case, it's not even in the record whether or not the money was ever made available, was ever used at all, because we didn't have to put on a case. The money would be made available. The record doesn't reflect that the money was actually taken or used. So Mr. Redding, I want to be sure I understand your position. Are you saying that the termination clause was in fact part of the lawsuit, the first lawsuit that was brought, it was triggered? Or are you saying that it didn't matter in light of all the other alleged breaches that were set out in that lawsuit? That doesn't matter. Termination clause is inartfully included. It's not really a termination clause. It's just something that happens after death if there was still money outstanding. But it's there. You would just have us read that out and say, never mind? I'd have you do the same thing the district court did, which was to say that the consideration for the use of the money was to pay the interest and to take care of the sisters in the ways that were set out in the note itself. Clearly, Pop didn't believe those things were done. That's why he had Roger Rooney file the lawsuit the time he did, almost immediately. It appears at least from the lawsuit itself that George never did the things that he was supposed to do. That's why the lawsuit prays for pre-judgment interest all the way back to the time that the note was executed. So it appears those things never happened. To look at it otherwise would say to Pop, George not doing what he promised to do, not paying quarterly interest, not making the payments on the sisters' behalf, that Pop could do nothing about it at all until after you died. No, no, no. He could sue to enforce those provisions of the promissory note, but not necessarily the termination clause. Well, if George does nothing, doesn't make the interest payments, I suppose he could sue for each quarterly payment or each back payment that was due? The condition of the $230,000 loan or use of the money was that they do those things. If they didn't do those things, he's entitled to get the money back. I completely agree with that. It's just right on the face of the note. What it says? It's not a – the note was an installment note. It was use of the money by the corporation for as long as the corporation took care of these things. If it didn't take care of these things, he could have asked right away, I want my money back. That's our contention. Well, it says it. The conditions for this use of the money, and then otherwise, if there's full compliance, then the money would go back 30 days after his death. That's right. That was the deal. That's not a breach clause. That's just when the whole note ends its operation. That's right. And we believe that's what the district court found, and that's what the evidence shows. Although not well drafted, it was pretty plain. I don't know why it's that well drafted for your purpose. You keep saying that, but the obvious words say, I'm loaning the corporation $230,000. They can use the money until after my death, so long as they do A, B, C, and D. They didn't do A, B, C, and D, according to him, ever. And he's entitled to have that money back, and that's what he sued for. Agreed. And why wouldn't the cause of action accrue to get that money back for failure of those $230,000? That's our contention. It did accrue then. So then George and his wife walk away with $230,000. It's not in the record whether or not they ever got the money. So that would be an issue if the court had not directed verdict, then we would have put on a case as to whether or not it did. So I'm not going to speak to it because it's not in the record, but on the flip side, it's not in the record that they received the money. So they're not walking away from anything. That's not before the panel. So have you locked the family in a room and told them to settle? I think three or four times. Both, all lawyers tried that. And Judge Anderson I withdraw the question. We're here to decide the case. Yes, sir. Moving on to, if it pleases the court, to the first issue that the appellees brought, which is that the court erred in finding George and Diane to be jointly severally liable for breach of fiduciary duty. First contention there is that George is not and cannot be a fiduciary. What about constructive fraud? That would require him to be found as a fiduciary. Why? That's one of the elements of constructive fraud. You have to be a fiduciary to have constructive fraud? Yes, Your Honor. So because George can never be a fiduciary as a beneficiary, he's really in the same boat with respect to his duties as his sisters. He's a co-beneficiary. Now as a practical matter, we recognize that Diane is the trustee and their husband and wife and still are. So that's a factual matter, but it doesn't change the law. George's duty does not be, is not expanded by virtue of the fact that he's the husband of the trustee. That's just the way it was. At one point he was the trustee himself. Wasn't there a claim that, well not a claim, but an allegation of civil conspiracy in the lawsuit? No, sir. There wasn't? There was not a claim for civil conspiracy. There was not. Does the complaint allege civil conspiracy? No. I thought it did. I may be wrong about that, but it wasn't found by the court. Let's assume that it does. If it did, could George be found liable based on a theory of civil conspiracy? Well, under North Carolina law, and I believe North Carolina law will apply here, and that's what the court went on, in the case of Bottoms v. Bailey, there's no such claim as aiding and abetting a breach of fiduciary duty. I know. I'm not talking about, I'm talking about civil conspiracy. And that court also dealt with civil conspiracy because that was pled in the Bottoms v. Bailey case, where civil conspiracy was pled. That claim was dismissed by 12B6 as being insufficient. Whatever it is, what had to be proven here, I would contend that Ms. Ballard did not go about trying to prove a civil conspiracy, and certainly the judge's order does not find it. You have a wife that's a trustee, right? Yes, sir. And you have a husband that tells the wife to do something which is going to benefit them both. The wife does what the husband says, they get the money, and the wife puts it in their joint bank account, and he now has the full benefit of what he told the wife to do. You're suggesting that that husband now has no liability? Not at all. We conceded... He doesn't engage in that kind of conduct? The law is just blind to that kind of conduct? Well, let me argue the facts just slightly. Those are the facts, but the implications could be argued slightly differently, is that any beneficiary can call up any trustee at any time and say... My hypothetical is he clearly directed her to do that. She listened to him, she did it, and the money was transferred to his account. True. All right. Now... And as... And you're saying he should just walk away without accounting for that money? Absolutely not. What Ms. Ballard pled against George was breach of contract, and we conceded. We conceded that that was a loan from the trust to George, and loans of that type can be made under North Carolina law and South Carolina law, specifically can be made at less than commercially reasonable terms. What do you do about the finding of fact by the district court that it was not a loan? Well, it's actually a conclusion of law that it was not a loan, and we contend that that was wrong. In fact, that's our fifth issue, is that conclusion is wrong. And we mainly rest on North Carolina General Statute 36C-8-816 that allows trustees to make loans to beneficiaries at less than commercially reasonable terms, and even not take a note, doesn't say that, but that's the implication, because it also allows that those loans will be liens against future distributions. In other words, a trustee is not obligated to act like a bank, particularly where it's an amateur trustee, which is what Diane was. She doesn't have to take a note. She didn't have to require interest. It can be less than commercially reasonable terms. That's what we would contend the purpose of that statutory provision is, is to allow trustees to make loans like that. Could a court order disgorgement of monies that a trustee wife makes to her husband? Yes, and in fact, that's what we contended this Court should do here. You've called it a disgorgement, Your Honor, but we would call it simply finding that the note needs to be repaid, and never took a position otherwise. George Combis received a loan. Court didn't find that. Court disagreed with both Ms. Ballard and with us, that that was a loan. But we have made that an issue in this appeal, because we believe that under the statutory provision, I just cited, that it could be a loan, and it is a loan. But do you agree or disagree that whether the transfer was a loan is a question of fact for this Court to determine whether there was clear error? And the judge said it was not a loan. We disagree that it was an issue of fact, and if we would direct the Court to the record itself, and I'll give you the citation, if you'd look at the joint appendix at page 139, the confusion in this, and I noticed it in Ms. Ballard's brief, is that although it appears in the record or in the judgment itself after the conclusions start, so it's one of the conclusions of law, that Judge Anderson did say, I find this. But it's in the conclusions of law, and to find, and to hold or to find that a transaction is not a loan, we would contend is a conclusion of law, not a finding of fact. I mean, that's a legal conclusion, and it is, in fact, that's why we've, that's why our issue frames it in that manner, that it is an actual conclusion of law, and that should be addressed de novo, not under clear error. And because the statutory provision that I've cited is so directly on point here, that it's permitted that Diane could make that type of loan. She could have made it to, she could have made it to George, she could have made it to the sisters in the same way. And the record does reflect a lot of transfers, payments that were made to the sisters for various reasons, paying the mortgage on the houses they were living in and paying them money for living expenses. And none of these things met generally accepted counting principles. Diane was an accountant, she made a lot of accounting errors, which is why we're here today. But because the statute allows her to do what she did, and because we've never taken the position that it's otherwise, it's simply a loan that hasn't been repaid, court should have found that to be a breached contract, and it can be one or the other. In fact, in her testimony on the issue, Ms. Ballard did not contend otherwise. If you look at the statute, I specifically asked her how she thought the claims lined up, and she said, well, it's either a loan to George or a breach by Diane to make the loan in the first place, but not both. Ms. Ballard, of course, has been practicing law for a long time, she saw it that way then, I see it that way, I see it that way now. It can't be both. Either George was, either Diane was entitled to make the loan, as the statute said, George received the money, and he's obligated to pay it back now, or it was a breach of fiduciary duty for Diane to do it in the first place. Shouldn't have done it. But in either case, they can't be jointly and separately liable. How do you, how would you characterize a breach of fiduciary duty under North Carolina laws? Is it a tort, or is it a contract? It's an action other than contract. That goes into my interest argument, but, I mean, it has to be a tort, because it's clearly not a contract action. So, because of that, moving to the interest issue, under 24-5B, it's an action under the contract, it's an action other than contract, and interest, prejudgment interest can only be told to the date of filing, not all the way back to the date of the breach. And for whatever reason, Judge Anderson chose to do that, but that's not North Carolina law. What's your best case for that proposition? I don't think that there really is a case that stands directly for that proposition. That's just Mr. Redding on law, is that? No, that's, North Carolina's legislature, that's 24-5B. I mean, it's so clear. That court order prejudgment interest on sums that are clearly definable, as opposed to a tort that involves an automobile accident, say. Here, we're talking about a specific amount of money. Sure. And I know under Maryland law, when you have a specific amount at issue, a court can award as damage, the loss of use of the money, prejudgment. Right. And the question is, can a court in North Carolina do that? Yes. So, number one, but the first response to that question, Your Honor, would be, does North Carolina's prejudgment interest statute, is it designed to redress the loss of use of money? And in the case of Brown v. Floe, it clearly does. That's one of the purposes of it. Now, why the legislature has chosen to differentiate between contract actions and tort actions in making one accrue at filing and the other accrue at breach? It's clear why, and there's a case law all over the country on that. It's clear why, because contract is a defined specific amount, definable amount. Sure. Whereas no one knows the amount of a tort which has pain and suffering and all the other items that can't be delineated before the suit. And it's clear that courts don't hold them responsible for something that is not defined in terms of amount. And I agree with that. There are some cases where a court could allow interest, not statutory interest, but interest as a form of compensatory damages rather than interest. And those are the... That's going to be my second question. In other words, it looks pretty clear to me that North Carolina does what other courts do. Then the question is, here the court used the statute as opposed to just finding it as an element of damage. Does that make a difference? Is that an error that's meaningful? Yes, sir. That's a meaningful error because to do that, the court could not simply use the statutory interest rate. The court would have had to take testimony. There had to be evidence of what the time value of money was or the value of money was. I mean, that's the few cases that address that, require that. And there was no evidence put on by Ms. Ballard that had the money been in the trust account, that it would have drawn a particular interest rate or it could have been used to invest, somebody could have invested it and made interest on it. That testimony, that evidence never came before the court. And that's what would have been required because 8%, really, that's an arbitrary interest rate that the general legislature established for prejudgment interest. And it's well-defined and there really aren't any exceptions to that. The court did not indicate, really, I think this part of the judgment is a little bit vague. It did not clearly indicate that this was supposed to be compensatory rather than prejudgment interest because it used the word statutory. So it's a little difficult to figure out exactly what the court was trying to do other than, because the court said it, compensate for the loss of the use of the money. And again, that's under Brown v. Flo in other cases. I mean, that's the purpose of prejudgment. That's the purpose of 24-5B. So I would say a fair characterization of what Judge Anderson did was to combine two remedies into one, but that's just not North Carolina law. Statute is clear on that. Should have started the interest clock at the date of filing, which is November 11, 2013. Of course, that's a $200,000 difference. What's your case law authority that a breach of a fiduciary duty is a tort as opposed to a contractual action? Because you have a Tyson case out there that says that the breach of contract statute of limitation applies in the breach of fiduciary duty. And you also have this express trust that's created by this. But what case law do you have that says prejudgment interest shouldn't be applied in this case? Well, prejudgment interest should be applied in this case. And we're not contending otherwise. We're just saying because it's an action other than contract. So while I don't have a case to show you that says breach of fiduciary duty is a tort, that's really not the question. The statute reads otherwise. It says for actions other than contract. And there is really no argument that this is a contract action. It's not a contract. So that throws it into the other half. Why isn't it a contract? I'm sorry. Why isn't it? It's not a In other words, a breach of fiduciary duty can occur in the absence of a trust agreement. It just can be a fiduciary relationship. But when you have a trust agreement and that's breached, why isn't it a contract action? I think the best argument to that would be what a lawyer does. So for instance, when I undertake representing a client, we have a contract because I'm going to do the work as a lawyer. But also I have a fiduciary duty to the client. It's separate. Activity is not defined in that contract. This is a trust agreement which imposes responsibilities on the trustee. And Judge Floyd's question is, why isn't that a breach of contract? No offer, no acceptance, no meeting of the minds between the parties. The sisters didn't enter into a contract with Diane Kambas for her to serve as the trustee. She was appointed as a trustee. She's appointed. I mean, they're I know, but that's according to the terms of the trust. Sure. But they're not parties to the trust in the sense that they were the set for. She didn't have to accept that. True. But in answering the question Now she breaches that arrangement. Why can't the contract interest run on that? It's not a contract. There's no contractual relationship between Diane and the sisters. All right. I see your red light's up. I'm over time, so thank you, Your Honor. All right. I guess we have you back, Mr. Truslow. Thank you. Let me just go back to this. I've looked up what the complaint said in this case. And the complaint said, on or about July 14, 2005, Plaintiff and Superior entered an agreement which provided that in exchange for the loan, the sum of $230,000, Superior agreed to pay interest quarterly, to continue to employ Kambas and Kambas, and to pay automobile insurance. Plaintiff made a foresaid loan to Superior, but Superior has breached the aforesaid agreement. They want to recover the sum of $230,000, together with interest they're on at 8%, from July 14, 2005. And they said those things had never been satisfied. That's the complaint. So now the question is, that indicates that a cause of action was available in 2005. And the question is, just because he dismissed it or never served it, doesn't mean that the cause of action didn't accrue. And so I get back to my original question is, why wasn't this a cause of action that accrued in 2005? Aside from the arguments I've made about whether it was served, whether it was legitimate. That is irrelevant. Yes, sir. The question is, this is just evidence. Yes, sir. That there was a breach and a cause of action. He asserts that it was breached from the beginning, and it was a condition of the $230,000, and he asked for the full $230,000 back. There's also evidence in the record, and you'd asked about this, at page 317 in the Joint Appendix 317 and 318 that George, at one point in time, said that he'd paid it. Also, Ms. Ballard found evidence that George had paid it. I'm reading at page 318 that Mary and Linda had been paid some money, health insurance, $150,000, whatever answer. I've seen a lot of those documents. So we still don't know if there was a breach or when. He's got different positions from when he's pressed, whether he paid it, whether he didn't pay it, whether he's done so much for his father. I think Judge Floyd made a comment, should George get away with this? He owed the money. He got the money, and he says he paid it back at one time. Another place he said he shouldn't have to pay it back. He didn't pay it back. Ms. Ballard found evidence in the record that he'd made the payment. So we come back to the point where we don't know if there was a breach, when it took place. Well, and also he took a voluntary non-suit on the case, maybe because they were doing what they were supposed to do. I don't know that from the record. But Rule 41 talks about claims, and so the claims pre-death are one thing. The claims post-George, post-Pop's death is another claim. Does that make sense? Yes, sir. We don't, based on the record, we don't know. There's, again, evidence that he was paying. For all we know, he and Pop got together, and Pop said, you know, you're right. I pulled the trigger too quick. There's evidence that he would run hot and cold. Yeah, you've been doing it or you haven't been doing it. The record really doesn't reflect. For the reasons I've stated, I would suggest that my client should be able to get the 230 and then divide it according to Pop's plans. You have all your time. You now can respond to the transfer of the $412,000. The court made the right decision for the right reasons. It would be unconscionable for George. He's calling all the shots. His wife might be named as PR. Can you aid in a bet under North Carolina? Can you aid in a bet of breach of trust? There's some cases that say it hasn't been decided, and other cases that say in a security context you can. I don't know, but I can say this, is that he was the de facto acting as a fiduciary. He was calling the shots. Diane says in the transcript that he was the one that kept the records. He was in charge of the tax returns. He had all the documentation. He was telling her what to do. He was even trying to foreclose to kick his sisters out of their homes. If he could make them homeless, then you have the golden rule, the guy with the gold wins. So he was the de facto personal representative, but it doesn't matter. They took the money. They put it into their account for the two of them to secure their line of credit, in which their joint home was the collateral. So the result ought to be the same. Well, the result, but what's the theory, legal theory? For recovery against George. I think the court could have looked at it. What is your legal theory? My theory is that George changed so many times about what happened that the court had to make a call. George, at one point in time, would say he didn't know anything, that he paid it, but he couldn't give documentation. They would say it was a draw. Then we asked Diane, excuse me, a loan. Then we said, well, where are the loan documents? She says, I don't have any. Well, where are they? Well, do you have an interest rate? No. George told me to give him the money, so I gave it. Well, was it a loan? She said no. It's in the record. Well, what was it? Well, it was a draw. Well, how does George get a draw? How does George give himself a draw from the trust? And she really couldn't answer it, and then it was kind of like, well, you know, Pop loved us, and we shouldn't have to pay the money back. Thank you. Thank you. All right, Mr. Redding, you have one rebuttal to that claim. There is no legal theory to support joint and several liability. There is a legal theory. Let me ask you that question I asked, is what's the status currently in North Carolina on aiding and abetting a breach of trust? We contend that there is. Under these circumstances, there is no breach of trust. Under these circumstances, a general proposition. Isn't there a case law involving securities that's aiding and abetting is a breach of trust? There may well be, but that's not the case here. It's not a securities case. It's a breach of fiduciary duty out of a trust. That makes a difference, you think? Sure does. But it's in the. . . A fiduciary, and what North Carolina case do you have that aiding and abetting is not a, can't be done in a breach of trust case? It's Bottomsy Bailey, which is a relatively recent case. And my final comment on it is this is a case that just calls for a proper accounting. Don't deny that George received that loan. Believe that he should pay it back. George has conceded that. It's the fact that he's still a one-third beneficiary under the trust. We don't know what's left in the trust. We know there's some property. We have no idea what. The trust should be closed. A demand, either distribution should be made, and if it turns out that George, the two-thirds interest that he was loaned, that aren't his, he's obligated to pay that back. And if that's a breach, then it would run back to the date that the complaint was filed. In Bottom versus Bailey, they said, while we need not address whether a claim for aiding and abetting a breach of fiduciary exists at law, we note the plaintiff's amended complaint does not state such a claim. Well, if you go a little higher up in the case, it discusses it, Your Honor. It discusses it, and it says it never reaches it because they didn't state a claim in the paper. I don't think that case settles it. All right. Thank you, Your Honor. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Albert Diaz, Henry F. Floyd